IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DIAMOND RESORT HAWAII CORPORATION, a Hawaii corporation; DIAMOND RESORT MANAGEMENT, INC., a Hawaii corporation; and JANIC CORPORATION, a Hawaii corporation, | ) ) ) ) ) ) ) ) | CV. NO. 10-00117 DAE-LEK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| BAY WEST KAILUA BAY, LLC, a Virginia limited liability company, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

ORDER: (1) GRANTING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT; AND (2) DENYING DEFENDANT'S RULE 56(d) REQUEST

On February 4, 2011, the Court heard Plaintiffs' Motion for Summary

Judgment. Steven M. Egesdal, Esq., and William H. Harstad, Esq., appeared at the

hearing on behalf of Plaintiffs; Crystal K. Rose, Esq., and Matthew C. Shannon,

Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion

and the supporting and opposing memoranda, the Court GRANTS Plaintiffs'

Motion for Summary Judgment (Doc. # 29) and DENIES Defendant's Rule 56(d)

request (Doc. # 52).

<u>BACKGROUND</u>

On March 3, 2010, Diamond Resort Hawaii Corporation, Diamond Resort Management, Inc., and Janic Corporation (collectively, "Plaintiffs") filed a Complaint alleging a breach of a June 6, 2008 promissory note ("Note") on a commercial loan from Plaintiffs to Bay West Kailua Bay, LLC ("Defendant"). ("Compl.," Doc. # 1.) The principal amount of the loan was $2,123,255.00. (<u>Id.</u> ¶ 7.)

Prior to executing the promissory note on August 20, 2007, Plaintiffs entered into a Purchase and Sale Agreement ("Purchase Agreement") with Black Diamond Hospitality Investments, LLC ("Black Diamond"), for the sale of the Hotel Wailea, located at 555 Kaukahi Street, Wailea, on the island of Maui ("Property"). ("Opp'n," Doc. # 50 at 3.) Specifically, the Property contained 1400 ownership units, at least 491 of which Black Diamond contracted to purchase from Plaintiffs per the Purchase Agreement. (PCSF, Ex. 9 ¶ 6.)

On June 4, 2008, Plaintiffs, Defendant, and Black Diamond entered into a Partial Assignment of Rights Under Purchase and Sale Agreement; Twelfth Amendment to Purchase and Sale Agreement ("Twelfth Amendment"), whereby Black Diamond assigned to Defendant the right to purchase 123 units of the Property for $3,690,000.00. (Opp'n at 3; PCSF, Ex. 10.) Pursuant to the terms of

the Twelfth Amendment, Defendant provided a down payment to Plaintiffs in the sum of $1,566,745.00 for the purchase of the 123 units of the Property.  On June 6, 2008, Defendant executed the Note here at issue for the remaining $2,123,255.00 as proscribed by the Twelfth Amendment.  (Id.)  On July 1, 2008, Defendant executed an amendment to the Note ("Amendment to Note"), which extended the Note's maturity date to June 30, 2010.  (Compl. ¶ 8.)

Defendant secured the Note by executing a Purchase Money First Mortgage, Security Agreement and Financing Statement ("Mortgage") on June 6, 2008.  (Id. ¶ 9.)  The Mortgage was filed in the Land Court as Document No. 3756432.  (Id.)  The Mortgage was subsequently amended on July 1, 2008, with an agreement and financing statement filed in the Land Court as Document No. 3765202.  (Id.)  The Mortgage granted Plaintiffs a mortgage lien and security interest in the Property.[1]  (Id.)

On June 16, 2008, Defendant executed an Accommodation Mortgage Security Agreement and Fixture Filing in favor of Central Pacific Bank ("CPB") in connection with a loan from CPB to Black Diamond ("Accommodation

---

[1] On June 6, 2008, Defendant filed a financing statement in favor of Plaintiffs in the Bureau of Conveyances, State of Hawaii.  (Doc. # 1 ¶ 10.)  On June 13, 2008, Defendant filed a financing statement in favor of Plaintiffs in the Office of the Clerk for the State Corporation Commission of the Commonwealth of Virginia.  (Id.)  Both statements were amended in July 2008.  (Id.)

Mortgage").  (Id. ¶ 11.)  Plaintiffs subordinated their interests under the Mortgage to the CPB Accommodation Mortgage on June 30, 2008.  (Id. ¶ 13.)

On November 4, 2009, Defendant conveyed its interest in the 123 units of the Property to Black Diamond by Assumption Deed.  (Id. ¶ 14.) Defendant thereby assigned its rights and obligations established by the Note, including its payment obligations, to Black Diamond.  (Id. ¶ 16.)  Plaintiffs, however, maintain that while they consented to the assignment and delegation, they explicitly did not release Defendant from its financial obligations under the Note or Mortgage.  (Id. ¶ 15–16.)

Plaintiffs allege that, as of January 30, 2010, the full balance of principle and interest under the Note remained unpaid.  (Id. ¶ 20.)  On February 10, 2010, Plaintiffs notified Defendant of default on the note and accelerated payment of all amounts owed.  (MSJ at 2.)  Plaintiffs thereafter brought suit against Defendant to recover damages for the entire principal amount under the Note, including any accrued unpaid interest as well as attorney's fees and costs.  (Compl. ¶ 27.)

On September 23, 2010, Plaintiffs filed a Motion for Summary Judgment on Complaint ("Motion"), along with a Concise Statement of Facts. ("MSJ," Doc. # 29; "PCSF," Doc. # 30.)  On January 17, 2011, Defendant filed a

4

Memorandum in Opposition to the Motion for Summary Judgment[2]

("Opposition"), along with a Concise Statement of Facts.[3] (Opp'n, Doc. # 52;

Defendant's Concise Statement of Facts in Opposition "DCSF," Doc. # 51.) On

January 24, 2011, Plaintiffs filed a Reply. (Reply, Doc. # 55.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Porter v.

Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc.,

198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to

dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett,

477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial. See id. at

---

[2] Defendant originally filed Doc. # 50 as its Opposition. Defendant, however, submitted a corrected filing on January 18, 2011, as Doc. # 52.

[3] At the hearing, Plaintiffs argued that Defendant's Concise Statement of Facts ("CSF") did not directly respond to the facts in Plaintiffs' CSF. Plaintiffs argued that pursuant to Local Rule 56.1(g), all facts in Plaintiffs' CSF should be deemed admitted. The Court finds Defendant's CSF necessary for determination of the instant motion, however, to the extent that Defendant failed to rebut the facts Plaintiffs alleged in their CSF they are deemed admitted per Local Rule 56.1(g).

323.  Before granting summary judgment, however, a non-moving party must have

a "'full and fair opportunity to ventilate the issues [related to] the . . . claims.'"

Norse v. City of Santa Cruz, 629 F.3d 966, 972–73 (9th Cir. 2010) (quoting Greene

v. Solano Cnty. Jail, 513 F.3d 982, 990 (9th Cir. 2008)).

The burden initially falls upon the moving party to identify for the

court those "portions of the materials on file that it believes demonstrate the

absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477

U.S. at 323).  This assertion must be supported by citations "to particular parts of

materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations, . . . admissions, interrogatory

answers, or other materials," or by demonstrating "that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

If the moving party meets its burden under Rule 56, the nonmoving

party "must set forth specific facts showing that there is a genuine issue for trial"

and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d at 891

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting

forth "specific facts," the nonmoving party may not meet its burden on a summary

judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134. Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

Where conflicting evidence is presented by both parties, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

Plaintiffs seek summary judgment on the grounds that "[Defendant] made the Note, delivered the Note to Lender, assigned the Note without being released on the Note, defaulted on the Note, and did not cure that default after notice thereof." (MSJ at 6.) Defendant argues that summary judgment is not appropriate because the parties intended to release Defendant from liability on the Note, and, therefore, a genuine issue of material fact exists. (Opp'n at 18.) The Court is unpersuaded by Defendant's argument for the reasons discussed below.

I.    Enforceability of the Note

Under Hawaii law, "[t]he essential elements of a suit on a promissory note are: (1) the defendant is the maker of the note (e.g., signed the note); (2) the plaintiff is the owner and holder of the note (e.g., it is made payable to or has been endorsed to the plaintiff; (3) the note is in default; and (4) the defendant owes a certain sum." Bank of Honolulu v. Anderson, 654 P.2d 1371, 1375 (Haw. App. 1982) (stating those elements for commercial paper). Upon a careful examination of the Note, the Court finds these elements satisfied. (See PCSF, Ex. 1; DCSF, Ex. C.) The record shows that: (1) the Note was signed by Defendant; (2) Plaintiffs are the owners and holders of the note; (3) the Note is in default as Defendant has failed to make any payments on the Note since its first due date beginning August 1, 2008; and (4) as of January 31, 2010, the principle balance of the Note was $2,123,255.00 and interest totaled $49,542.05. (Id.; Compl. ¶¶ 19–20.) Indeed, neither party contends that the essential elements of establishing liability on a promissory note are absent. Instead, Defendant argues that the Twelfth Amendment and thereby the Note are ambiguous and that the Court must turn to extrinsic evidence to determine the intent of the parties. The intention of the parties, according to Defendant, was to absolve Defendant of liability on the Note

once its rights and obligations were transferred via Assumption Deed from Defendant to Black Diamond.

## II.    Ambiguity of the Note

Whether a contract is ambiguous is a question of law for the court. Local Motion, Inc. v. Niescher, 105 F.3d 1278, 1280 (9th Cir. 1997).  This Court's review is limited to the express terms of a contract unless an ambiguity exists in the contract terms.  See United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 149 P.3d 495, 508–09 (Haw. 2006); State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 978 P.2d 753, 762 (Haw. 1999); Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10, 31–32 (Haw. 1992); Hanagami v. China Airlines, Ltd., 688 P.2d 1139, 1144–45 (Haw. 1984).  "Since the determination of whether an ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of parties, a conclusion of ambiguity is not compelled by the fact that the parties to a document, or their attorneys, have or suggest opposing interpretations of a contract, or even disagree as to whether the contract is reasonably open to just one interpretation."  11 Williston on Contracts § 30:4 (4th ed. 1999 & Supp. 2010).  "'[T]he test lies not necessarily in the presence of particular ambiguous words or phrases but rather in the purport of the document itself, whether or not particular words or phrases in themselves be uncertain or

doubtful in meaning.'" Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 78 P.3d 23, 33 (Haw. 2003). Moreover, "[t]he existence of mutual assent or intent to accept is determined by an objective standard." Standard Mgmt., Inc. v. Kekona, 53 P.3d 264, 273 (Haw. 2001).

The Hawaii Supreme Court has "adopt[ed] the view allowing extrinsic evidence, i.e., all evidence outside of the writing including parol evidence, to be considered by the court to determine the true intent of the parties if there is any doubt or controversy as to the meaning of the language embodying their bargain." Hokama v. Relinc Corp., 559 P.2d 279, 283 (Haw. 1977) (emphasis added); see In re Lock Revocable Living Trust, 123 P.3d 1241, 1247–48 (Haw. 2005); Matter of Ikuta's Estate, 639 P.2d 400, 406 (Haw. 1981). In the absence of ambiguity or claims of fraud, duress, or mutual mistake, extrinsic evidence is inadmissible. See State Farm, 978 P.2d at 762.

In the instant case, Plaintiffs argue that the Note is unambiguous on its face. (MSJ at 11.) Defendant, for its part, argues that there is ambiguous language in the Note and that the Court must therefore consider extrinsic evidence. (Opp'n at 2). In its entire Opposition, however, Defendant fails to identify one instance of

ambiguous language in the Note.[4]  Upon review of the Note, the Court finds it is

unambiguous.  (See PCSF, Ex. 1).  The Note contains no blanks, unclear terms, or

terms to be determined at a later time.  (Id.)  Moreover, the Note clearly and

unambiguously establishes Defendant's obligation to pay and does not condition

payment on any external agreement, oral or otherwise.  (Id.)  Put differently, the

Note is not capable of being reasonably understood in more than one way.  See

Heatherly v. Hilton Hawaiian Village Joint Venture, 893 P.2d 779, 792 (Haw.

1995) (citing Cho Mark Oriental Food v. K & K Intl., 836 P.2d 1057, 1063–64

(Haw. 1992).  The Note is therefore clear and unambiguous.

III.    The Twelfth Amendment

Plaintiffs contend that because the Note is unambiguous, the parol

evidence rule precludes the Court from considering any extrinsic evidence that

could demonstrate the parties' intentions when executing the note.  (MSJ at 11.)

In its Opposition, Defendant maintains that it should be relieved from

its liability under the Note because of ambiguous language found in a clause within

the Twelfth Amendment.  (Opp'n at 17–18.)  Specifically, Defendant contends that

---

[4] Defendant, as discussed infra, instead focuses its analysis on what it
perceives to be an ambiguous term in the Twelfth Amendment.

the Twelfth Amendment contains an ambiguous "cooperation clause" within its

"1031 provision."[5]  (Id.)  The clause, in its entirety, reads as follows:

> Seller shall cooperate with Assignee in connection with any such Section 1031 exchange, provided that (a) Seller shall not incur additional liability or cost as a result of such Section 1031 exchange, (b) the Second Closing shall not be delayed as a result thereof, and (c) the Seller shall not be required to take title to any exchange property.

(PCSF, Ex. 10.)  Defendant argues that the phrase "shall cooperate" is ambiguous,

and because the parol evidence rule allows extrinsic evidence to be introduced

where a contract is ambiguous, the Court should look to the parties' intent to

determine the clause's meaning.  (Opp'n at 14.)  In particular, Defendant claims to

have "interpreted that clause to mean that Plaintiffs would cooperate in the

execution of any documents in furtherance of the exchange, including an eventual

release of [Defendant's liability on the Note] after its units were transferred to

[Black Diamond]."  (Id. at 13.)  Accordingly, Defendant requests that the Court

find that a question of fact exists and that summary judgment should be denied.

(Id. at 13–14.)

---

[5]"A 1031 exchange is an exchange of property held for productive use in a trade or business or for investment for property of a like kind which is also to be held for 'productive use in a trade or business' or for investment."  Moran v. Guerreiro, 37 P.3d 603, 607 (Haw. Ct. App. 2001) (citing 14 R. Powell, Powell on Real Property § 83A.01, at 83A-5 (2000)).  "Pursuant to 26 U.S.C. § 1031, a taxpayer may be able to defer recognition of any gain or loss realized on the exchange."  Id. at 607.

Hawaii's parol evidence rule dictates that "[w]here a writing is found to be clear and unambiguous and 'represents the final and complete agreement of the parties,' the parol evidence rule bars evidence 'of prior contemporaneous negotiations and agreements that vary or alter the terms of a written instrument.'" Dawson Int'l, Inc., 149 P.3d at 508–09 (citing State Farm, 978 P.3d at 762); see also Island Ins. Co., Ltd. v. Hawaiian Foliage & Landscape, Inc., 288 F.3d 1161, 1167 (9th Cir. 2002) (citing State Farm, 978 P.3d at 762). "Thus, 'once the parties execute an instrument which contains their whole agreement, their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is irrelevant regardless of who offers it.'" Dawson Int'l, Inc., 149 P.3d at 509 (quoting Akamine & Songs, Ltd. v. Am. Sec. Bank, 440 P.2d 262, 266 (Haw. 1968)).

In the promissory note context, "[p]arol evidence of a prior or contemporaneous oral agreement is generally inadmissible to vary or contradict the terms or legal effects of a promissory note when there is no ambiguity or uncertainty on the face of the instrument to those terms or to that effect." Cosmopolitan Fin. Corp. v. Runnels, 625 P.2d 390, 392 (Haw. Ct. App. 1981).

In light of these principles, as well as the Court's finding that the Note is clear and unambiguous, the Court may not look to extrinsic evidence either to

find ambiguity within the Note, or to determine whether to enforce the Note.[6]  As

such, the Court may not consider the Twelfth Amendment as extrinsic evidence.

To avoid this result, Defendant argues that the Amendment to Note

references the Purchase Agreement, and thus the Amendment is incorporated by

reference.  (Opp'n at 5.)  Specifically, the Amendment to Note states that "[t]he

maturity date of the Note was June 16, 2008, which was later extended to June 30,

2010 pursuant to Section 10.3(b) of the Purchase Agreement."  (PCSF, Ex. 2.)

Although the Amendment to Note cites to the Purchase Agreement, Defendant

overreaches in asserting that this reference suffices as an incorporation.  First, the

Note and Amendment to Note reference only the Purchase Agreement and not the

Twelfth Amendment itself.  Thus, the Twelfth Amendment is not explicitly

incorporated by reference.

_____

[6]The Court notes that as a general matter, under Hawaii law, principles of contract interpretation such as the parol evidence rule and the statute of frauds may not be used against a party in order to perpetuate a fraud.  See Honolulu Federal Sav. and Loan Ass'n v. Murphy, 753 P. 2d 807, 811 (Haw. 1988) (holding that where it appears a written agreement has been conceived in fraud, the parol evidence rule is inapplicable); Dobison v. Bank of Hawaii, 587 P. 2d 1234, 1235 (Haw. 1978) (holding that the statute of frauds will not constitute a bar to an action for fraud).  In the instant case, however, neither party alleges that the relevant documents were created as a result of fraud or that any fraudulent acts took place surrounding the creation of the relevant documents.

Second, even if the argument could be made that referencing the Purchase Agreement indirectly references the Twelfth Amendment because the Twelfth Amendment is an amendment to the Purchase Agreement, it still cannot be incorporated by reference because the Amendment to Note mentions only Section 10.3(b) of the Purchase Agreement.  When a provision or section of another document is incorporated by reference into a contract, the entirety of that specific provision or subject matter is incorporated as a whole.  See State v. Hawaiian Dredging Co., 397 P.2d 593, 606 (Haw. 1964); see also Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1428 (9th Cir. 1986) ("When a document incorporates outside material by reference, the subject matter to which it refers becomes a part of the incorporating document just as if it were set out in full.").  However, any non-referenced portions of a document cannot be incorporated by reference into the first document.  See Hui v. Castaneda, 120 S. Ct. 1845, 1852–53 (2010) (holding that incorporating by reference all provisions of chapter 171 into the document, where only specific portions of chapter 171 establishing a remedy are referenced, would be superfluous); see also Hawaiian Dredging Co., 397 P. 2d at 606 (holding that a cross-reference to a corrected description and diagram at page 769 of a text resulted in an incorporation of that specific subject matter, but the court did incorporate any portion of the text outside of that specific portion).  Thus, the

Court may not incorporate by reference the Twelfth Amendment or the "cooperation clause" of the Twelfth Amendment into the Note, simply because the Amendment to Note mentions Section 10.3(b) of the Purchase Agreement.

Defendant also argues that the Note "was one small part of a large, complex transaction," and thus, the Court should consider the Twelfth Amendment and Note together as one contract. (Opp'n at 2.) This argument fails as well. Assuming <u>arguendo</u> that the Note and Twelfth Amendment were one contract, the terms of the two instruments are repugnant, thus interpreting them together would alter or destroy their effect.

Specifically, Defendant's argument is that the alleged ambiguity in the "cooperation clause" of the Twelfth Amendment actually reflected a release from liability for Defendant. This construction, however, is directly controverted by the Note. Specifically, Paragraph 8 of the Note states that "<u>[Defendant] and all other parties</u> now and hereafter liable for the payment of this Note . . . jointly and severally waive" various provisions and, "expressly agree that this Note or any payment hereunder may be extended from time to time in the sole discretion of [Plaintiffs], without in any way affecting the liability of [Defendant] or any guarantors or endorsers." (PCSF, Ex. 1 (emphasis added)). In other words, the Note explicitly finds Defendant <u>and</u> all other parties liable on the Note. This

indicates a clear intent on the part of the signatories to the Note that Defendant remain liable through the Note's duration.[7]  For these reasons, the Court may not read the Note together with any other prior or contemporaneous agreement, such as the Twelfth Amendment, which would alter or be repugnant to the terms of the Note.

Further, if the Court read the Twelfth Amendment and Note as one contract, the "cooperation clause" could no longer be ambiguous, as alleged by Defendant.  Defendant argues that its release from liability was intended to be provided for in the "cooperation clause;" however, the language in Paragraph 8 of the Note explicitly states that Defendant would remain liable on the Note. Therefore if the Note and Twelfth Amendment were read together, the "cooperation clause" would unambiguously indicate that Defendant could not be released from liability.

Finally, the Twelfth Amendment does not actually mention a release, so any evidence of the release is based upon an alleged oral agreement.  "An oral condition that is repugnant to the conditions stated in the writing, or is offered in

---

[7]Additionally, the Note mentions nothing about an eventual release of the maker of the Note.

substitution for it, is inadmissible." 3 Williston § 634. Therefore, even construing the Note and Twelfth Amendment as one contract, Defendant's argument fails.

Accordingly, the Court will not consider the Twelfth Amendment in determining the enforceability of the Note.

IV.     Additional Arguments Made By Defendant

To explain why the Note did not include a provision absolving Defendant of liability on the Note, Defendant asserts "the parties could not include a release provision for when after the units were exchanged and transferred to [Black Diamond] because the exchange had to appear as a 'stand alone' transaction for tax purposes." (Opp'n at 15.) In other words, if the parties had explicitly contracted for a release, "it would compromise the tax savings of the 1031 Exchange." (Id. at 15–16.) The Court is unpersuaded by this argument.

First, it is an established principle of Hawaii contract law that "one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained." Leong v. Kaiser Foundation Hospitals, 788 P.2d 164, 168 (Haw. 1990); see also Courbat v. Dahana Ranch, Inc., 141 P.3d 427, 437(Haw. 2006) (same). "[A] competent party who signs a written instrument is bound by its terms; and in the absence of mistake, fraud, or duress, a failure to read or understand the contents of the instrument cannot relieve the signing party of the

obligation imposed therein." <u>Liberty Bank v. Shimokawa</u>,632 P.2d 289, 292

(Haw. 1981) (citations omitted).  Defendant, a competent party who assented to the

Note, is bound by its terms and cannot now explain why the Note was drafted as it

was to avoid liability.

Moreover, the Court is unable to consider such extrinsic testimony in

interpreting the Note because, as stated above, the Note is clear and unambiguous.

The parol evidence rule bars the Court from taking into consideration any ulterior

motives that may have influenced the writing of the Note because they are outside

the scope of the four corners of the document.  <u>See</u> <u>Dawson Int'l</u>, 149 P.3d at

508–09 ("Where a writing is found to be clear and unambiguous and represents the

final and complete agreement of the parties, the parol evidence rule bars evidence

of prior contemporaneous negotiations and agreements that vary or alter the terms

of a written instrument" (quotations omitted)).

In sum, the Court recognizes that a greater transactional scheme may

have existed beyond simply the Note between Plaintiffs and Defendant, and that

Defendant may not have been the intended final purchaser or owner of the

Property.  The existence of such a scheme does not, however, release Defendant

from its liability on the Note.  The Note is clear and unambiguous, and any

extrinsic evidence that materially alters the terms of the Note may not be

introduced.  As such, the Court finds that Defendant cannot be released from liability on the Note.

Accordingly, the Court GRANTS Plaintiffs' Motion for Summary Judgment and finds that Plaintiffs' are entitled to recover against Defendant for enforcement of the Note.

V.      Defendant's Rule 56(d) Request

Finally, Defendant requests that the Court continue Plaintiffs' summary judgment motion under Federal Rule of Civil Procedure 56(d)[8] "in order to conduct depositions of the parties involved in the transaction."  (Opp'n at 19.) A party requesting a continuance, denial, or other order under Rule 56(d) must demonstrate: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."  Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008) (citing California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998)); Fed. R. Civ. P. 56(d). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary

_____

[8] Defendant actually request relief under Rule 56(f).  The 2010 Amendments to Rule 56 moved the provisions of subdivision (f) to subdivision (d) without substantial change.  See Fed. R. Civ. P. 56.

judgment." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001); see also Tatum v. City & County of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006). The moving party must also show that it was diligent in pursuing its previous discovery opportunities. See Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir. 1994). Failing to meet this burden "is grounds for the denial" of a Rule 56(d) motion. Pfingston v. Ronan Eng. Co., 284 F.3d 999, 1005 (9th Cir. 2002).

In the instant case, Defendant has failed to meet its burden under Rule 56(d). First, Defendant fails to set forth in a separate affidavit the specific facts that, when revealed by further discovery, would preclude summary judgment. Failure to comply with the requirements of Rule 56(d) "is a proper ground for denying discovery and proceeding to summary judgment." Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008) (quoting Brae Transp. Inc. v. Coopers & Lybrand, 790 F.3d 1439, 1443 (9th Cir. 1986)). This alone is sufficient reason to deny the request.

Further, even if the Court were to allow Defendant additional time to collect depositions of the parties involved in the transaction, such evidence would not alter the above findings of the Court—the Court would not consider extrinsic evidence. Therefore, Defendant has failed to demonstrate that the additional

evidence it seeks would prevent summary judgment.  Accordingly, Defendant's Rule 56(d) request is DENIED.

CONCLUSION

For these reasons, the Court GRANTS Plaintiffs' Motion for Summary Judgment (Doc. # 29) and DENIES Defendant's Rule 56(d) request (Doc. # 52).   Although this Court has granted Plaintiffs' motion for summary judgment, it does not address the extent of damages to which Plaintiffs are entitled. Plaintiffs are hereby directed to file a separate motion for damages.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 25, 2011.

_____
David Alan Ezra
United States District Judge

Diamond Resort Hawaii Corporation et al. v. Bay West Kailua Bay LLC, CV No. 10-00117 DAE-LEK;  ORDER: (1) GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING DEFENDANT'S RULE 56(d) REQUEST